## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TERRY L. PROCTOR, SR., *et al.*,

              *Plaintiffs*,

        v.

CARYOLYN J. SCRUGGS, *et al.*,

              *Defendants*.

                  Civil Action No. RDB-23-3396

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

TERRY L. PROCTOR, SR., *et al.*,

              *Plaintiffs*,

        v.

STATE OF MARYLAND, *et al.*,

              *Defendants*.

                  Civil Action No. MJM-24-251

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

These consolidated civil rights cases arise from the brutal December 14, 2020, murder of Terry Proctor, Jr. ("Decedent"), while he was incarcerated at Dorsey Run Correctional Facility in Jessup, Maryland. On the night of 14th, another Dorsey Run inmate, Deandre Allen, entered the housing unit where Proctor was sleeping and stabbed him more than thirty times. He died on the scene despite efforts of the medical to save him. Plaintiffs are Proctor's family: Terry L. Proctor, Sr., individually and as representative of the Estate of Terry L. Proctor, Jr., is his father; Stephanie Proctor-Lassiter is his Mother; and Shanae Johnson, as Parent and

Next Friend of minor child Terry Proctor, III, is the mother of his son. On December 14, 2023, they contemporaneously filed parallel civil rights cases in this Court and in the Circuit Court for Baltimore County, Maryland.

On December 20, 2024, after the state case was removed to this Court and the two actions were consolidated, *see* (ECF No. 26),[1] Plaintiffs filed the operative twelve-count Amended Complaint. (ECF No. 64.) Defendants in the Amended Complaint are various Maryland officials: Carolyn Scruggs is the Secretary of the Maryland Department of Public Safety and Correctional Services; David Greene is Assistant Warden of Dorsey Run Correctional Facility; Carol Harmon is Warden of Dorsey Run Correctional Facility; Ikechukwu Nwachukwu and Temesgen Woldesenbet are Dorsey Run corrections officers who were on duty on Proctor's housing unit on the night he was murdered. The Amended Complaint alleges three federal deliberate-indifference claims under 42 U.S.C. § 1983 and nine Maryland constitutional and common law claims. *See generally* (*id.*). This Court has federal question subject matter jurisdiction over Counts I, II, and III. *See* 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the remaining State claims, Counts IV–XII, under 28 U.S.C. § 1367.

Now pending is Defendants' Motion to Dismiss the Amended Complaint or, in the alternative, for Summary Judgment (ECF No. 77). The Motion is fully briefed, and on December 4, 2025, the Court heard argument from the parties. (ECF No. 91.) For the reasons detailed on the record and further explained below, the Court GRANTS IN PART and

---

[1] Unless otherwise noted parenthetically, any docket reference is to the lead case of these consolidated cases, RDB-23-3396. When the Court cites to any docket entries in the consolidated member case, MJM-24-251, the case number is included in the citation.

DENIES IN PART Defendants' Motion (ECF No. 77). Specifically, Counts I and II of the Amended Complaint (ECF No. 64) are DISMISSED by agreement of the parties as reflected in the hearing record. The Court GRANTS the Motion to Dismiss (ECF No. 77) as it pertains to Count III of the Amended Complaint, which is DISMISSED WITHOUT PREJUDICE for failure to state a federal deliberate-indifference claim under the Eighth Amendment. Finally, with respect to the state claims alleged in Counts IV–XII, the Court declines to exercise its supplemental jurisdiction under 28 U.S.C. § 1367. Accordingly, the Maryland claims are DISMISSED WITHOUT PREJUDICE in the lead case of these consolidated cases, RDB-23-3396. In the member case, MJM-24-251, which originated in the Circuit Court for Baltimore County, Maryland and was removed to this Court by Defendants (MJM-24-251 ECF No. 1), Counts IV–XII are REMANDED to the Circuit Court for Baltimore County. *See* 28 U.S.C. §§ 1367, 1447; *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025).

## BACKGROUND

### I.    Factual Background

In ruling on a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, reads the complaint as a whole, and takes the well-pleaded facts asserted there as true. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). On December 14, 2020, Decedent Terry Proctor, Jr., was incarcerated at Dorsey Run Correctional Facility in Jessup, Maryland.[2] (ECF No. 64 ¶¶ 1, 16.) Proctor was housed in Dorsey Run's pre-

---

[2] These facts come from the Amended Complaint (ECF No. 64)—and are taken as true for the purposes of deciding this Motion (ECF No. 77)—except where the parties jointly clarified certain facts at the December 4, 2025, motions hearing (ECF No. 91). Those facts

release unit, Housing Unit 2, as he was scheduled to be released from prison around August 2021. (*Id.* ¶¶ 2, 17–18; ECF No. 91.) Housing Unit 2 does not contain single-bed cells but rather is set up in a "dormitory style" with multiple bunks in each "dorm" room. (ECF No. 64 ¶¶ 17, 25; ECF No. 91.)

Shortly before 11:00 P.M. on the night of December 14, 2020, as the inmates' nightly "lights out" time was approaching, a Dorsey Run corrections officer[3] conducted a walk-through security check of Housing Unit 2 before turning the overhead lights off for the night and returning to the security control center outside of the Unit. (ECF No. 64 ¶¶ 20, 24.) At this point, Proctor was asleep in his bed. (*Id.* ¶ 24.) Some moments after the corrections officer left Decedent's dorm, another inmate, Deandre Allen, entered the room, went over to Decedent's bed, and brutally attacked him. (*Id.* ¶¶ 24, 29.) Allen stabbed Proctor more than thirty times with a weapon made from a sharpened prison-issue fan blade. (*Id.* ¶ 29.) At least five of the stab wounds were independently fatal, with four to his lungs and one to his brain through his left eye. (*Id.* ¶ 30) The attack lasted less than one minute.[4] (ECF No. 91.) The Amended Complaint alleges that Proctor yelled out in pain while being assaulted. (ECF No. 64 ¶ 31.)

The Amended Complaint also alleges that Allen and Proctor were housed in different dorm rooms within Housing Unit 2 and that, at that point of the night, Allen should not have

---

are noted accordingly in this background section by citing to the docket entry for the hearing, ECF No. 91.

[3] The Amended Complaint does not make clear which corrections officer conducted the walk-through; it provides only that "Defendants Nwachukwu and/or Woldesenbet and/or another unnamed correctional officer" did so. (ECF No. 64 ¶ 20.)

[4] The Court has reviewed the CCTV-footage of the attack. (ECF No. 30-6.)

been able to go to Decedent's dorm. (ECF No. 64 ¶ 25.) Further, it alleges that more than a year before Decedent's murder Allen had been charged with possessing a weapon made of sharpened metal, roughly five-and-a-half inches long with a cloth handle. (*Id.* ¶ 26.) Plaintiffs assert that the weapon Allen used to kill Decedent was identical. (*Id.* ¶ 27.)

After Allen attacked Decedent, he walked out of the unit with blood on his person and clothing. (*Id.* ¶ 33.) Some time later, but within a matter of no more than six minutes after the attack, *see* (ECF No. 91), Allen approached the security control center where Woldesenbet and Nwachukwu were stationed and told them that someone in the Unit needed help. (ECF No. 64 ¶ 35.) Defendants Nwachukwu and Woldesenbet then entered Housing Unit 2 and found Decedent bleeding, laying on the floor next to his bed. (*Id.* ¶ 37.) Nwachukwu noted that Decedent was still breathing. (*Id.* ¶ 38.) Either Nwachukwu or Woldesenbet called for medical help, which arrived four minutes after they entered the dorm and discovered Decedent. (ECF No. 91; ECF No. 64 ¶ 41.) In the four minutes between discovering Decedent and the arrival of medical staff, neither Nwachukwu nor Woldesenbet rendered medical aid. (ECF No. 64 ¶ 39.) However, the Amended Complaint also states that neither Nwachukwu nor Woldesenbet "had [any] way of knowing the severity of [Proctor's] injuries or whether their lifesaving efforts would have been successful." (*Id.* ¶ 43.)

When medical staff arrived, Proctor was unresponsive to verbal commands and was breathing only inconsistently. (*Id.* ¶ 44.) He had visible injuries to his head, face, and torso. (*Id.* ¶ 45.) Medical staff performed cardiopulmonary resuscitation ("CPR") on Decedent, placed a medical rebreather on him, and proceeded to apply automated external defibrillator on his

chest, but the device advised no shock. (*Id.* ¶ 46.) Within two minutes of medical staff arriving, Proctor stopped breathing. (*Id.* ¶ 47.) He was pronounced dead on the scene. (*Id.* ¶ 48.)

The Amended Complaint alleges that Defendants Carolyn Scruggs, Secretary of the Department of Public Safety and Correctional Services; David Greene, Assistant Warden of Dorsey Run Correctional Facility; and Carol Harmon, Warden of Dorsey Run Correctional Facility, were responsible as prison officials for maintaining Dorsey Run's safety and security, as well as providing for the security of the inmates therein. (*Id.* ¶ 52.) It further alleges that Scruggs, Greene, and Harmon had a duty to ensure that Dorsey Run officers were trained to act constitutionally, and that those Defendants failed those duties by not properly training Nwachukwu and Woldesenbet. (*Id.* ¶¶ 53, 66–70.) Plaintiffs assert that this failure led to Decedent's death. (*Id.* ¶ 67.)

Plaintiffs also claim that in the days prior to his murder, Proctor wrote Greene a letter "discussing a fight that occurred days prior. [Decedent] wrote the letter because he was reasonably concerned for his safety. The prior non-fatal attack also involved [Allen,]" who was allegedly the aggressor in that attack. (*Id.* ¶¶ 53, 54.) The Amended Complaint alleges that Defendants knew that inmates made homemade weapons out of items in their housing units or elsewhere around the prison, and that Defendants had previously found such weapons within various units. (*Id.* ¶ 71.)

## II.    Procedural History

On December 14, 2023, Plaintiffs filed a ten-count complaint (the "Original Federal Complaint") in this Court against Scruggs, Greene, and five John Doe Dorsey Run corrections officers. (ECF No. 1 at 1–2.) The Original Federal Complaint alleged three federal counts and

seven state counts. *See generally* (*id.*). The three federal counts all arose under 42 U.S.C. §1983 and alleged violations of the Fourteenth Amendment to the United States Constitution (Count I); the Fourth and Fourteenth Amendments (Count II); and the Eighth Amendment (Count III). (*Id.* ¶¶ 49–63, 64–73, 74–83.) The seven state counts alleged: violations of Articles 16 and 25 of the Maryland Declaration of Human Rights (Count IV); violations pf Articles 24 and 26 of the Maryland Declaration of Human Rights (Count V); negligence (Count VI); gross negligence (Count VII); wrongful death (Count VIII); survivorship (Count IX); and negligent hiring, retention, training, and supervision (Count X). (*Id.* ¶¶ 84–87, 88–92, 93–99, 100–11, 112–19, 120–25, 126–40.)

Also on December 14, 2023, Plaintiffs filed a parallel ten-count complaint (the "State Court Complaint") in the Circuit Court for Baltimore County, Maryland. (MJM-24-251 ECF No. 2.) There, Plaintiffs sued the State of Maryland, the Department of Public Safety and Correctional Services, and Greene. (*Id.* at 1–2.) Plaintiffs alleged wrongful death (Count I); survivorship (Count II); violations of Articles 16, 19, 24, 25, and 26 of the Maryland Declaration of Human Rights (Count III); *Longtin* unconstitutional pattern or practice[5] (Count IV); negligent hiring, retention, training, and supervision (Count V); violations of the Fourteenth Amendment via 42 U.S.C. § 1983 (Count VI); violations of the Fourth and Fourteenth Amendments via 42 U.S.C. § 1983 (Count VII); violations of the Eighth

---

[5] "*Longtin* claims" derive from *Prince George's County v. Longtin*, 19 A.3d 859, 889 (2011), a case in which the Supreme Court of Maryland held that "the Maryland Constitution recognizes a 'pattern or practice' claim as part of its protections of citizens against unconstitutional actions of local government and its employees." *Longtin* claims operate as Maryland constitutional corollaries of federal pattern or practice claims brought under 42 U.S.C. § 1983, which the United States Supreme Court recognized in *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)).

Amendment via 42 U.S.C. § 1983 (Count VIII); negligence (Count IX); and gross negligence (Count X).[6] (*Id.* ¶¶ 43–50, 51–56, 57–75, 76–104, 105–19, 120–34, 135–44, 145–154, 155–61, 162–73.)

On January 25, 2024, Defendants removed the State Court Complaint to this Court. (MJM-24-251 ECF No. 1.) On April 1, 2024, they moved to consolidate the cases. (ECF No. 23.) Plaintiffs filed a Notice with the Court indicating that they did not contest consolidation. (ECF No. 25.). This Court then ordered consolidation on April 10, 2024, with RDB-23-3396 as the lead case and MJM-24-251 as the member case. (ECF No. 26.)

On May 31, 2024, Defendants filed a Motion to Dismiss or, in the alternative, for Summary Judgment. (ECF Nos. 30, 32.) On July 12, 2024, after the Court granted multiple extensions of time to reply to the Motion to Dismiss, *see* (ECF Nos. 42, 43, 45), Plaintiffs filed a Motion for Leave to File Amended Complaint (ECF No. 46) and Response in Opposition to Motion to Dismiss (ECF Nos. 47, 48). On December 20, 2024, the Court granted the Motion for Leave to File Amended Complaint by Memorandum Order. (ECF No. 63.) That Order also found Defendants' Motion to Dismiss (ECF Nos. 30, 32) to be moot. (ECF No. 63.)

That same day, December 20, 2024, Plaintiffs filed the operative twelve-count Amended Complaint. (ECF No. 64.) The Amended Complaint lists as Defendants: Carolyn Scruggs, Secretary of the Department of Public Safety and Correctional Services; David

---

[6] As is evident from the list of claims, the Original Federal Complaint (ECF No. 1) and the State Court Complaint (MJM-24-251 ECF No. 2) were essentially the same. Outside of the *Longtin* claim and Article 19 of the Maryland Declarations of Human Rights claim—both of which were pleaded exclusively in the State Court Complaint (*id.* ¶¶ 57–75, 76–104)—the two Complaints are substantively identical in all ways except ordering and styling of the counts.

Greene, Assistant Warden of Dorsey Run Correctional Facility; Carol Harmon, Warden of Dorsey Run Correctional Facility; and two Dorsey Run corrections officers, Officer Ikechukwu Nwachukwu and Officer Temesgen Woldesenbet. Scruggs is sued only in her official capacity. (ECF No. 91.) The other Defendants are sued in their official and individual capacities. Just as with the State Court Complaint and the Original Federal Complaint, the Amended Complaint (ECF No. 64) alleges three federal counts under 42 U.S.C. § 1983, claiming violations of the Fourteenth Amendment (Count I), the Fourth and Fourteenth Amendments (Count II), and the Eighth Amendment (Count III). (*Id.* ¶¶ 75–89, 90–98, 99–113.) The Amended Complaint also contains nine counts under Maryland constitutional and common law. Specifically, Plaintiffs allege: violations of Articles 16 and 25 of the Maryland Declaration of Rights (Count IV); violations of Articles 24 and 26 of the Maryland Declaration of Rights (Count V); negligence (Count VI); gross negligence (Count VII); wrongful death (Count VIII); survivorship (Count IX); negligent hiring, retention, training, and supervision (Count X); *Longtin* unconstitutional pattern or practice (Count XI); and violations of Article 19 of the Maryland Declaration of Human Rights (Count XII). (*Id.* ¶¶ 114–17, 118–22, 123–29, 130–43, 144–51, 152–57, 158–73, 174–202, 203–09.)

After the Court granted Defendants two extensions of time to respond to the Amended Complaint (ECF Nos. 70, 75), Defendants filed the pending Motion to Dismiss or, in the alternative, for Summary Judgment. (ECF No. 77.) On December 4, 2025, the Court held a hearing on the Motion. (ECF No. 91.)

## STANDARD OF REVIEW

As permitted by Federal Rule of Civil Procedure 12(d), Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, summary judgment pursuant to Rule 56. (ECF No. 77 at 1–2). As noted above, both parties filed exhibits with their briefing on the Motion to Dismiss (ECF No. 77). The Court can resolve the Motion without considering matters outside of the Amended Complaint (ECF No. 64) and the parties' briefs (ECF Nos. 77-2, 84, 89). As such, the Court declines to examine the exhibits and construes Defendants' Motion solely as Rule 12(b)(6) motion to dismiss. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); *Francis v. Maryland*, ELH-21-1365, 2023 WL 2456553, at *7 (D. Md. Mar. 10, 2023).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b), a complaint must set forth "'a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 570). A complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. A complaint need not include "detailed factual allegations," *Iqbal*, 556 U.S. at 678, but it must contain "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

## ANALYSIS

Defendants seek dismissal of all twelve counts of the Amended Complaint (ECF No. 64). (ECF No. 77.) In their briefing on the Motion to Dismiss, *see generally* (ECF Nos. 77-2, 84, 89), and at the hearing on December 4, 2025 (ECF No. 91), the parties agreed to dismiss Counts I and II of the Amended Complaint (ECF No. 64). Accordingly, Counts I and II are DISMISSED.

The remaining Amended Complaint includes ten counts. There is one federal count under 42 U.S.C. § 1983, which alleges deliberate indifference in violation of the Eighth Amendment's cruel-and-unusual-punishment clause. (*Id.* ¶¶ 99–113.) The other nine counts assert Maryland constitutional and common law claims. (*Id.* ¶¶ 114–209.) As explained further below, the Court GRANTS Defendants' Motion to Dismiss Count III as it fails to state a plausible deliberate-indifference claim. Under the discretion accorded to this Court in 28 U.S.C. § 1367, the Court declines to exercise supplemental jurisdiction over the remaining State claims. As such, the Court DISMISSES WITHOUT PREJUDICE Counts IV–XII of the Amended Complaint as those counts exist in the lead case, RDB-23-3396. The Court REMANDS Counts IV–XII of the Amended Complaint for the member case, MJM-24-251, to the court from which the case was removed, the Circuit Court for Baltimore County, Maryland.[7]

---

[7] Though the two cases have been consolidated and now operate under the same Amended Complaint (ECF No. 64), they are nevertheless independent cases. *See Hall v. Hall*, 584 U.S. 59, 70 (2018) (quoting *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496–97 (1933) ("'[C]onsolidation . . . does not merge the suits into a single cause, or change the rights of the parties."). Accordingly, the Court disposes of each on its own. Because the member case, MJM-24-251, was removed to this Court, a remand is proper. 28 U.S.C. §§ 1367, 1447. The lead case, RDB-23-3396, originated in this Court and so dismissal is proper.

## I.    Count III: 42 U.S.C. § 1983 Claim Alleging Eighth Amendment Violations

Count III of the Amended Complaint is a 42 U.S.C. § 1983 claim alleging violations of Decedent's rights under the Eighth Amendment to the United States Constitution. (ECF No. 64 ¶¶ 74–83.) Plaintiffs bring this claim against Defendants Scruggs and Greene in their official capacities: namely, Scruggs as the Secretary of the Maryland Department of Public Safety and Correctional Services and Greene as Assistant Warden of Dorsey Run Correctional Facility. They also sue Greene in his individual capacity, along with Defendants Harmon, Nwachukwu, and Woldesenbet. The Court first addresses the official-capacity claims before turning to the individual-capacity claims.

### a.    Official-Capacity Claims Against Scruggs and Greene

The official-capacity claims against Scruggs and Greene must be dismissed because such claims are not allowed under § 1983. Section 1983 allows plaintiffs to bring claims against "every person" who violates their statutory or constitutional rights. "[A] state is not a person within the meaning of [the statute.]" *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). As such, states cannot be sued under § 1983 because they are outside of the scope of the statute. The same is true for any suit against a state official in her official capacity, as it "is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71 (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). It is therefore "no different from a suit against the State itself." *Id.* (collecting cases). Consequently, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* This is a jurisdictional bar: "a suit [under § 1983] against state officials that is in fact a suit against a State is barred." *Pennhurst State Sch.*

*& Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1985). Thus, Plaintiffs official-capacity claims against Scruggs and Greene are DISMISSED.

### b. Individual-Capacity Claims Against Greene, Harmon, Nwachukwu, and Woldesenbet

Against Defendants Greene, Harmon, Nwachukwu, and Woldesenbet individually, Plaintiffs raise three claims of deliberate indifference in violation of the Eighth Amendment. (ECF No. 84 at 40–56.) First, Plaintiffs claim that Defendants Greene and Harmon were deliberately indifferent to a substantial risk to Decedent's safety under a theory of supervisory liability. (*Id.* at 43–50.) Second, Plaintiffs allege that Defendants Greene, Nwachukwu, and Woldesenbet were deliberately indifferent to a substantial risk to Proctor's safety because they failed to protect him from harm. (*Id.* at 50–55.) Third, Plaintiffs assert that Defendants Nwachukwu and Woldesenbet were deliberately indifferent to Proctor's medical needs by calling for medical personal without immediately rendering aid. (*Id.* at 55–56.) Count III's individual-capacity claims must be dismissed because they fail to state plausible claims under the Eighth Amendment's deliberate-indifference standard.[8]

---

[8] Because the allegations in Count III of the Amended Complaint are insufficient to state any claim of deliberate indifference under the Eighth Amendment, the Court need not address Defendants' arguments (ECF No. 77-2 at 59–60) that they are entitled to qualified immunity. *Francis v. Maryland*, ELH-21-1365, 2023 WL 245553, at *22 n.17 (D. Md. Mar. 10, 2023) (dismissing for failure to state a claim and accordingly not conducting a qualified immunity analysis); *Robinson v. Bd. of Educ. of Washington Cnty.*, ELH-22-1102, 2023 WL 6643373, at *21 n.17 (D. Md. Oct. 12, 2023) (same).

### i. Deliberate Indifference Standard

The Eighth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment's Due Process Clause, *Robinson v. California*, 370 U.S. 660, 666 (1962), "prohibits the infliction of 'cruel and unusual punishments.'" *Pfaller v. Amonette*, 55 F.4th 436, 444 (4th Cir. 2022) (quoting U.S. Const. amend. VIII). The United States Court of Appeals for the Fourth Circuit has recently addressed this deliberate-indifference standard in a case similar to the case at bar. *See King v. Riley*, 76 F.4th 259, 259 (4th Cir. 2025). In the *King* case, the Fourth Circuit held that a prison official violates the Eighth Amendment's cruel-and-unusual-punishment prong when he is "deliberately indifferent to a substantial risk to an inmate's safety or medical needs." *King*, 76 F.4th at 264 (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prove that a prison official was deliberately indifferent, a plaintiff must meet both objective and subjective elements. *Id.* (citing *Farmer*, 511 U.S. at 828; *Pfaller*, 55 F.4th at 445). The objective element requires the inmate to demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Said differently, this prong requires showing that the alleged "deprivation [was] 'extreme.'" *Scinto v. Scarberry*, 841 F.3d 219, 225 (4th Cir. 2016) (quoting *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003)). The subjective element requires the inmate to show that the prison official had a "'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The culpable state of mind is that of deliberate indifference. *Id.* at 834. In *Farmer*, the Supreme Court explained that deliberate indifference means that the prison official was "aware of facts from which the

inference could be drawn that a substantial risk of serious harm exist[ed], and [drew] the inference." *Id.* at 835.

Taking these two elements together, to plead deliberate indifference to survive a motion to dismiss, a complaint must contain facts showing that the prison official both "knew about this substantial risk and recognized that their response to that risk was inadequate." *King*, 76 F.4th at 264 (citing *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 203 (4th Cir. 2004)). Crucially, an official who has knowledge of the risk but responds reasonably to it cannot be found liable under the Eighth Amendment. *Id.* (citing *Farmer*, 511 U.S. at 844). Deliberate indifference is a "'high standard,' requiring proof that the prison official had actual knowledge, both of a substantial risk of harm and that his actions were inappropriate in light of that risk." *Id.* at 274 (Wynn, J., dissenting) (quoting *Danser v. Strawberry*, 772 F.3d 340, 347 (4th Cir. 2014)). Said otherwise, it is an "exacting" standard. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

### ii. Supervisory-Liability Claim

Plaintiffs bring a supervisory-liability claim of deliberate indifference against Defendants Greene and Harmon. (ECF No. 84 at 43.) In their Response to Defendants' Motion to Dismiss (ECF No. 84), Plaintiffs rely on *Randall v. Prince George's County*, 302 F.3d 188, 203 (4th Cir. 2002), for the proposition that supervisors must "insure [*sic*] that [their] subordinates act within the law" and are liable for failing to do so. (*Id.* at 43.) *Randall* was abrogated by the United States Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009), and thus Plaintiffs' citation to that case is misplaced. In *Iqbal*, the Supreme Court explained that "the term 'supervisory liability' is a misnomer" in § 1983 claims because there is no *respondeat superior* liability for such claims. *Id.* Additionally, "a supervisor's 'mere

knowledge' that his subordinates are engaged in unconstitutional conduct is not enough." *King*, 76 F.4th at 269. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677.

To survive a motion to dismiss, therefore, a plaintiff in alleging deliberate indifference under a theory of supervisory liability "must show that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *King*, 76 F.4th at 269 (quoting *Iqbal*, 556 U.S. at 676). A § 1983 claim of deliberate indifference fails if it does not "contain specific allegations of each individual's conduct and state of mind." *Id.* (citing *Iqbal*, 556 U.S. at 677). That is, a complaint must allege liability "person by person" *Id.* As Judge Hollander of this Court has recently explained, "[i]f a plaintiff has not alleged any personal connection between a defendant and a denial of constitutional rights, the claim against that defendant must fail." *Jordan v. Maryland*, ELH-22-1541, 2024 WL 3597203, at *9 (D. Md. July 31, 2024) (collecting cases). "[I]dentify[ing] how each defendant violated the [C]onstitution" is "a prerequisite to a supervisory-liability claim." *King*, 76 F.4th at 269 (citing *Iqbal*, 556 U.S. at 677). "[B]oilerplate conclusion[s]—lacking defendant specificity and factual support—do[] not state a claim for relief." *Id.* (citing *Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 258 (4th Cir. 2022)).

At the December 4, 2025, hearing on Defendants' Motion to Dismiss (ECF No. 91), the parties discussed five alleged acts by Greene and Harmon, which Plaintiffs contend are sufficient to plead a supervisory-liability claim of deliberate indifference. *See also* (ECF No. 84 at 44–46; ECF No. 85 at 27–37). None of these five allegations is sufficient to state a claim for relief.

16

The first is that Greene and Harmon allegedly failed to ensure proper staffing in Decedent's housing unit in that there were roughly sixty men housed in the unit with only two officers supervising them at any time. (ECF No. 64 ¶¶ 131, 146.) Plaintiffs' Response in Opposition asserts that this led to an "extremely high risk of inmate-on-inmate violence." (ECF No. 84 at 44 (quoting ECF No. 64).) The Amended Complaint's allegation is legally insufficient because it is a bald conclusion; such conclusions never suffice to plead a claim past a motion to dismiss. *See Twombly*, 550 U.S. at 555 (explaining that a complaint "requires more than labels and conclusions"). The Amended Complaint does not contain factual matter showing any serious risk arising from the number of inmates housed on the unit; it merely states that Decedent lived in a unit with sixty other men. (ECF No. 64 ¶¶ 131, 146.) It is only Plaintiffs' Response in Opposition (ECF No. 84) which contends that the number of men housed on Decedent's unit led to an outsized risk of violence. At this pleading stage, however, the Court considers the sufficiency of the Amended Complaint on its own and does not consider this allegation as phrased in the Response in Opposition. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (collecting cases) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."). Judged on its own, the Amended Complaint lacks any facts which would create a plausible claim of deliberate indifference relating to staffing or the number of inmates housed in Decedent's unit. Moreover, there are no plausible facts alleged with respect to improper staffing in the particular housing unit.

The second alleged act is that Defendants Greene and Harmon failed to properly protect Proctor after he allegedly wrote them a letter informing them of a fight that occurred

at Dorsey Run some days prior to his murder. (ECF No. 64 ¶¶ 53–54.) The Amended Complaint specifically states that Decedent "wrote Defendant Greene a letter discussing a fight that occurred days prior. [Decedent] wrote the letter because he was reasonably concerned for his safety. The prior non-fatal attack also involved Mr. Allen. Mr. Allen was the aggressor." (*Id.* ¶¶ 53–54.) Taken as true and drawing all reasonable inferences in Plaintiffs' favor, this allegation lacks sufficient factual material showing a substantial risk to Proctor. It contains no facts that would show a culpable mental state on the part of Greene or Harmon. The allegation does not state that Allen attacked Decedent, nor would that be a fair inference to draw from the pleading. It merely states that Allen was an aggressor in a previous non-fatal attack. (*Id.* ¶ 54.) This is insufficient to plead deliberate indifference as to either Greene or Harmon. *See Gardner v. United States*, 184 F. Supp. 3d 175, 182 (D. Md. 2016) (explaining that a lack of "concrete factual allegations" failed to plead deliberate indifference).

Third, Plaintiffs allege that Greene and Harmon failed to take "any action despite knowing that Mr. Allen in particular posed a threat to other inmates at the facility." (ECF No. 84 at 45 (citing ECF No. 64 at 9).) Specifically, the Amended Complaint alleges that Allen had been charged with possessing a weapon made of sharpened metal approximately five-and-a-half inches long with a cloth handle roughly a year before killing Proctor. (ECF No. 64 ¶ 26.) This allegation is insufficient as a matter of law, as the "general knowledge of facts creating a substantial risk of harm is not enough" to plead a claim of deliberate indifference; "[t]he prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). Likewise, there is nothing here which would be sufficient to plead a culpable

mental state. As noted above, showing the mental state of deliberate indifference requires showing more than negligence or the existence of potentially dangerous conditions. *See Farmer*, 511 U.S. at 838 (citing *Wilson*, 501 U.S. at 299–302). Rather, the plaintiff must plead facts in the complaint which, if true, would show that the official "dr[ew] the inference" of a substantial and personal risk of harm to the inmate. *Id.* at 837. The Amended Complaint (ECF No. 64) contains no such factual allegations.

The fourth and fifth alleged acts both accuse Greene and Harmon of failing to appropriately train officers at Dorsey Run. (ECF No. 84 at 45–46 (citing ECF No. 64).) The fourth concerns training to conduct proper security checks. The fifth concerns training on how to respond to attacks "in the unit." (*Id.* at 45–46 (citing ECF No. 64).) Much like the first alleged act, these fourth and fifth allegations fail to state a claim because they are mere conclusions devoid of any factual development. Nothing in either of these conclusory allegations shows a substantial risk to Proctor nor deliberate indifference in the mind of Greene or Harmon. In sum, the Amended Complaint (ECF No. 64) lacks sufficient factual material necessary to give rise to a deliberate-indifference claim on a theory of supervisory liability with respect to Defendants Greene and Harmon.

### iii.  Failure-to-Protect Claim

Plaintiffs also claim that Defendants Greene, Nwachukwu, and Woldesenbet violated the Eighth Amendment by failing to protect Proctor from Allen's attack, which resulted in his death. (ECF No. 84 at 50–55.) The Court applies the same deliberate-indifference standard discussed above. As an initial matter, this claim must be dismissed as to Defendant Greene, as the Amended Complaint mentions Greene only once with respect to Count III: it contends

that Greene "did not take any action to ensure that Defendants Nwachukwu and Woldesenbet could properly monitor and observe all areas of the unit." (ECF No. 64 ¶ 106.) This fails under the "exacting" deliberate-indifference standard. *See Jackson*, 775 F.3d at 178. There is plainly no allegation of a culpable mental state on the part of Greene.

As concerns Nwachukwu and Woldesenbet, the Amended Complaint (ECF No. 64) plainly does not allege sufficient facts to create a plausible deliberate-indifference claim. Plaintiffs claim that on the night Proctor was murdered, December 14, 2020, Defendants Nwachukwu and Woldesenbet were assigned to supervise his housing unit. (ECF No. 64 ¶ 19.) It alleges that either Nwachukwu or Woldesenbet did a safety check of Decedent's unit briefly before "lights out." (*Id.* ¶ 20.) Then the murder occurred, which the parties agreed at the December 4, 2025, hearing lasted one minute at the very most. (ECF No. 91.) Plaintiffs allege that Proctor yelled out in pain during the murder. (ECF No. 64 ¶ 31.) The Amended Complaint states that Woldesenbet and Nwachukwu "were required to be stationed in a position to hear [Decedent's] pleas for help" and that they "either abandoned their post and responsibilities or blatantly ignored [his] pleas." (*Id.* ¶ 32.) It also alleges that they were in a position to see Allen leave the unit covered in blood and did not take any action. (*Id.*) At the hearing on this Motion to Dismiss (ECF No. 91), both parties agreed that the span of time in question from Allen's attack on Proctor to the arrival of medical care was around ten minutes.

These allegations are insufficient to state a claim of failure-to-protect against Woldesenbet and Nwachukwu. In their briefing and at oral argument, Defendants stated that neither Woldesenbet and Nwachukwu failed to protect Proctor because prison guards have no constitutional duty to intervene in an armed assault of one inmate on another when doing

so would place the guards in danger of physical harm. *See* (ECF No. 89 (quoting *Raynor v. Pugh*, 817 F.3d 123, 128 (4th Cir. 2016); ECF No. 91). T

hat argument misses the point. Notwithstanding *Raynor*, nothing in the Amended Complaint plausibly alleges that either Woldesenbet or Nwachukwu had notice of the attack until minutes after it had happened. The bald conclusions that they were required to be on post and "either abandoned [it] and [their] responsibilities or blatantly ignored [Proctor's] pleas," *see* (ECF No. 64 ¶ 32), are simply not sufficient to plead a plausible claim of failure to protect under the Eighth Amendment's stringent deliberate-indifference standard. As such, the failure-to-protect claims in Count III against Greene, Woldesenbet, and Nwachukwu are DISMISSED.

### iv.  Medical-Needs Claim

Plaintiffs' final claim of deliberate indifference violating the Eighth Amendment is that Defendants Greene, Nwachukwu, and Woldesenbet failed to provide Decedent proper medical care. (ECF No. 84 at 55–56.) For the same reason noted above for the failure-to-protect claim, this medical-needs claim must too be dismissed for Defendant Greene. There is no allegation of factual material which would allow a court to find that Greene acted with deliberate indifference to Decedent's medical needs.

As regards Defendants Nwachukwu and Woldesenbet, the Amended Complaint alleges that they failed to render Decedent medical aid after entering the dorm and finding him having been attacked. (ECF No. 64 ¶ 37.) Plaintiffs contend that once inside the dorm, Nwachukwu and Woldesenbet did not render aid despite Decedent still being alive. (*Id.* ¶ 39.) Four minutes elapsed between Defendants finding Decedent and medical staff arriving. (*Id.* ¶ 41.) The

Amended Complaint also states that Nwachukwu and Woldesenbet "had no way of knowing the severity of his injuries or whether their lifesaving efforts would have been successful." (*Id.* ¶ 43.)  These allegations are insufficient to plead a claim of deliberate indifference to medical needs against either Nwachukwu or Woldesenbet.

"[D]eliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle*, 429 U.S. at 104. This includes "indifference manifested . . . by prison guards in intentionally denying or delaying access to medical care." *Id.* at 104–05. Conversely, "'inadvertent failure to provide adequate medical care' simply fail[s] to establish the requisite culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle*, 429 U.S. at 105). Additionally, as noted above, a prison official who becomes aware of a substantial risk to the health of a prisoner and then responds reasonably is not deliberately indifferent. *Farmer*, 511 U.S. at 844. At the hearing on this Motion to Dismiss (ECF No. 91), Plaintiffs' counsel pointed the Court to the *King* case, in which the Fourth Circuit stated that officers may need to "do *something*" when they come across a badly-injured prisoner. 76 F.4th at 269. Plaintiffs' counsel argued that Nwachukwu and Woldesenbet failed to meet this standard by not themselves rendering aid upon discovering Decedent's body. (*Id.*) The Amended Complaint (ECF No. 64) makes clear, however, that the officers called medical staff soon after discovering Decedent as the medical staff arrived just four minutes later. (*Id.* ¶ 64.) The Eighth Amendment requires reasonable responses to substantial risks of harm, but does not mandate a certain type of response. *Farmer*, 511 U.S. at 844. Here, Nwachukwu and Woldesenbet's response was to call for medical aid, which arrived with four minutes. Defendants' Motion to

Dismiss (ECF No. 77) Count III's medical-needs claim against Woldesenbet and Nwachukwu is GRANTED.

**CONCLUSION**

For the reasons stated above, Counts I, II, and III are DISMISSED. In the lead case, RDB-23-3396, Counts IV–XII are DISMISSED WITHOUT PREJUDICE. In the member case, MJM-24-251, Counts IV–XII are REMANDED to the Circuit Court for Baltimore County, Maryland.

A separate Order follows.

Date: December 12, 2025

/s/
_____
Richard D. Bennett
United States Senior District Judge